## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANTIAGO RAMOS MUNOZ, | |
| Plaintiff, | |
| v. | Civil Action No. 21-2789 |
| | Judge Beryl A. Howell |
| TELLIGENT MASONRY LLC, *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

This run-of-the-mill wage dispute between plaintiff Santiago Ramos Munoz and his former employer, defendants Telligent Masonry LLC and its owner and director, Chris Papas, has turned into nothing short of a windfall—not for plaintiff, but for plaintiff's counsel.  Plaintiff, as the wronged employee, is walking away with a settlement of $4,379, while his counsel is asking for more than 1100% of that amount in fees, namely, $50,893.11.  *See* Pl.'s Second Supp. Mot. for Attys' Fees and Costs ("Pl.'s Second Supp.") at 5, ECF No. 18.  While the parties do not dispute that the plaintiff is entitled to reasonable attorneys' fees as a prevailing party in this case, *see* Defs.' Response to Pl.'s Mot. for Attys' Fees and Costs ("Defs.' Response") at 1, ECF No. 11, the fees requested by the plaintiff are patently unreasonable.  The Court thus awards $9,500 to cover plaintiff's attorneys' fees and costs, based on the time reasonably and meaningfully spent to advance the plaintiff's interests in this case.  *See* Defs.' Response at 16.

## I.    BACKGROUND

The factual background and procedural history relevant to the pending motion are described below.

A.      **Factual Background**

Defendant Papas is the owner and director of defendant company Telligent Masonry

LLC, and was an employer of plaintiff, who performed masonry work for defendants between

mid-2015 to early-2020.  Compl. ¶¶ 1, 3, ECF No. 1.  Plaintiff's work for defendants included

masonry work on "an apartment complex located next to the new D.C. United Stadium, an

apartment complex located near the corners of H and 6th Streets, N.E. Washington, D.C., and a

government building near the old D.C. United Stadium."  *Id.* at ¶ 8.  Plaintiff asserts that he spent

more than 50% of his working time in the District of Columbia.  *Id.* at ¶ 9.

During his employment, plaintiff alleges that defendants did not pay him for every hour

worked, and that defendants failed to pay him an overtime rate for overtime hours.  *Id.* at ¶ 10.

Since plaintiff completed some of this work for defendants in the District of Columbia, his

employment was covered by the District of Columbia Minimum Wage Revision Act

("DCMWRA") and the District of Columbia Wage Payment and Collection Act ("DCWPCA"),

in addition to the federal Fair Labor Standards Act ("FLSA").  *Id.* at ¶ 2.

B.      **Procedural Background**

Plaintiff filed the complaint in this matter in October 2021, asserting claims for unpaid

overtime wages under the DCWPCA, DCMWRA, and FLSA.  *Id.* at ¶ 4.[1]  Plaintiff asserted

entitlement to "unpaid overtime wages plus an equivalent amount equal to three times his unpaid

overtime wages as liquidated damages pursuant to D.C. Code §§ 32-1012 (b)(1), along with

attorney's fees at the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v.

District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1)."

Compl. ¶ 12.  Plaintiff also sought "unpaid overtime wages for the entire period of employment

---

[1]      This Court has subject matter jurisdiction to resolve plaintiff's federal claims under 28 U.S.C. § 1331 and
pendant jurisdiction over plaintiff's District of Columbia claims under 28 U.S.C. § 1367.

with Defendants, plus an equal amount in liquidated damages, plus attorney's fees at the Legal

Services Index Rates" for his FLSA claim.  *Id.* at ¶ 13.  Plaintiff did not pay his attorneys' fees as

they accrued, but rather the "case was undertaken on a contingency basis on the assumption that

[plaintiff's counsel] would petition the Court for its fees and costs at current LSI *Laffey* Matrix

rates if Plaintiff prevailed."  Pl.'s Mot. Attys' Fees & Costs ("Pl.'s Mot"), Ex. B, Decl. of Omar

Vincent Melehy ("Omar Melehy Decl.") ¶ 26, ECF No. 10-3.

In the interests of judicial economy, and to the benefit of all parties involved, defendants

sought to resolve this dispute through settlement as quickly and efficiently as possible.  *See*

Defs.' Response, Ex. 1, Aff. of Brandon Mourges ("Mourges Aff.") ¶¶ 5–6, ECF No. 11-2.

Defendants' counsel first contacted plaintiff's counsel to explore options to resolve the dispute

on November 5, 2021, approximately two weeks after the complaint was filed.  *Id.* at ¶ 5.  Given

this prompt and cooperative response, the parties agreed to extend the defendants' deadline to

file an answer, to allow time for settlement discussions before that deadline.  *Id.* at ¶ 6.

Defendants provided plaintiff with all requested payroll documents to investigate his

claim.  *Id.* at ¶ 8.  Using those payroll documents, defendants determined that while plaintiff

worked approximately 9,500 hours for defendants and was paid more than $200,000, his total

unpaid overtime wages was $1,046.50.  Defs.' Response at 3.  Defendants then communicated a

settlement offer to plaintiff on November 11, 2021, offering $2,093.00, equal to his unpaid

wages multiplied by two to include liquidated damages under the FLSA.  Mourges Aff. ¶ 10.

Without responding to defendants' offer, plaintiff requested additional documents to review,

including pay stubs and pay checks, which defendants provided on November 18, 2021.  *Id.* at ¶

11.

3

Defendants followed up with plaintiff on December 6, 2021, after initially receiving no response, and plaintiff rejected defendants' settlement offer on December 7, 2021, twenty-seven days after the offer was extended. *Id.* at ¶¶ 12–13. Plaintiff indicated that his calculation of the unpaid wages was $1,282.25, rather than $1,046.50, and that the maximum liquidated damages were $3,096.75, for a total of $4,379.00. *Id*; Pl.'s Mot., Ex. C., Decl. of Suvita Melehy ("Suvita Melehy Decl.") ¶ 8, ECF No. 10-4. Of this $4,379, plaintiff attributed $3,629, or approximately 83%, of the damages sought to work performed in the District of Columbia, and $750 to work performed in Maryland. Pl.'s Reply Mem. Supp. Attys' Fees and Costs ("Pl.'s Reply"), Ex. B, Settlement Demand Letter at 2, ECF No. 13-2.

In addition to the $4,379 in unpaid wages and liquidated damages, plaintiff's response demanded $25,000, plus future attorneys' fees and costs. Settlement Demand Letter at 2; *see also* Mourges Aff. ¶ 13.[2] Surprised by the excessive fee request, the next day, defendants requested a breakdown of hours spent by plaintiff's counsel on the case. Mourges Aff. ¶ 14. One week later, plaintiff's counsel emailed to say that no detailed breakdown of time worked could be provided, noting that providing the requested hours breakdown "would take considerable time," adding to the already hefty attorneys' fee bill. *Id.* at ¶ 18. On December 17, 2021, plaintiff provided defendants with a summary of total hours billed, by timekeeper. *Id.* at ¶ 20. This showed only that Partner Omar Vincent Melehy billed 9.6 hours to the case, Partner Suvita Melehy billed 7.8 hours to the case, Associate Andrew Balashov billed 7.5 hours to the case, and paralegals cumulatively billed 25.3 hours to the case. *Id.* At this point, plaintiff also indicated that his costs were between $750 to $1,200. *Id.*

---

[2] Plaintiff did not provide defendants with time records of plaintiff's counsel at the time that he demanded $25,000 in attorneys' fees, but defendants note that, based on the time records that were later provided, plaintiff had only incurred approximately $19,000 in fees at this point. Defs.' Response at 4.

Defendants filed their answer on December 17, 2021, before receiving the billing summary from the plaintiff.  *See* Answer, ECF No. 8; Defs.' Response, Ex. 2, Aff. of Meighan G. Burton ("Burton Aff.") ¶ 3, ECF No. 11-3.  On December 28, 2021, without receiving a more detailed fee statement, defendants offered to settle for the full amount in unpaid wages and liquidated damages claimed by plaintiff, $4,379, and $9,396 in attorneys' fees, which defendants estimated was the amount of reasonable fees incurred at this stage of the litigation.  *Id.* at ¶ 4. Plaintiff's counsel quickly rejected the attorney fee amount, although counsel indicated that she had not yet conferred with plaintiff about the settlement.  *Id.* at ¶ 5.

The parties' counsel spoke via telephone on December 30, 2021, and defendants' counsel again requested information about plaintiff's counsels time spent on the case, in the hopes of resolving the attorneys' fees issue.  *Id.* at ¶ 6.  On January 10, 2022, the parties finalized a settlement agreement as to plaintiff's claims, after plaintiff's counsel insisted that defendants' counsel draft and submit a settlement agreement.  *Id.* at ¶¶ 7–9.  The settlement agreement was executed on January 17, 2022.  Pl.'s Reply, Ex. D, Supp. Decl. of Suvita Melehy ("Suvita Melehy Second Decl.") ¶ 3, ECF No. 13-4.  The parties continued negotiating the fees.  Burton Aff. at ¶ 12.  On January 28, 2022, plaintiff's counsel extended a demand for $29,500 in attorneys' fees and costs, and finally provided a breakdown of the fees billed.  *Id.* at ¶¶ 12–13. The parties were still unable to agree, however, on a reasonable fee amount.  *Id.* at ¶ 13.

Plaintiff filed a motion for attorneys' fees on February 7, 2022, seeking $31,554.40 in attorneys' fees and $635.44 in costs.  Pl.'s Mot. at 1.  Plaintiff also requested that the Court award "any additional attorneys' fees and costs incurred by Plaintiff in connection with preparing the reply memorandum."  *Id.*  Defendants opposed, arguing that plaintiff's request was unreasonable, "particularly in this case, where the Defendants sought to avoid the unnecessary

accumulation of exorbitant attorneys' fees by seeking a quick and quite favorable resolution for

Plaintiff, but was delayed at every turn by Plaintiff's counsel."  Defs.' Response at 1.

Defendants requested that the fee award be reduced to $9,000 in fees and $500 in costs.  *Id.* at

16.  In reply, plaintiff increased the fee request to $37,935 in fees and $667.85 in costs to account

for the fees associated with preparing his reply.  Pl.'s Reply at 2; *see also* Pl.'s First Supp. Mot.

Atty's Fees and Costs ("Pl.'s First Supp."), Ex. B, Supp. Decl. of Omar Vincent Melehy ("Omar

Melehy Second Decl.") ¶ 1, ECF No. 14-2.

      With the parties' consent, this case was then referred to mediation to resolve the only

remaining dispute in this case concerning a reasonable fee reward.  *See* Order Setting Mediation

and Establishing Mediation Procedures, ECF No. 16.  In November 2022, the parties submitted a

joint status report indicating that their attempts at mediation were unsuccessful.  Joint Status

Report (November 2, 2022), ECF No. 17.  After a final supplement from the plaintiff and

response from the defendants, the plaintiff's fee request now stands at $50,133.50 in attorneys'

fees and $759.61 in costs.  Pl.'s Second Supp. at 5; *see also* Pl.'s Second Supp., Ex. C, Supp.

Decl. of Omar Vincent Melehey ("Omar Melehy Third Decl.") ¶ 1, ECF No. 18-3.

## II.    LEGAL STANDARD

      The FLSA provides that if a plaintiff prevails in an action to enforce his or her rights

under the statute, the Court should "allow a reasonable attorney's fee to be paid by the defendant,

and costs of the action."  29 U.S.C. § 216(b).  The DCMWRA and DCWPCA also provide for an

award of fees to a successful plaintiff.  *See* D.C. Code §§ 32–1012(c), 32–1308(b)(1).

Attorneys' fees are not limited to time spent in, and preparing for, adversarial proceedings alone.

"Rather, an attorney can recover for work when there is 'a clear showing that the time was

expended in pursuit of a successful resolution of the case in which fees are being claimed.'"

*Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 735 F. App'x 733, 736 (D.C. Cir. 2018) (per

curiam) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.* ("*Concerned Veterans*"),

675 F.2d 1319, 1335 (D.C. Cir. 1982) (per curiam)).

In applying a statutory fee-shifting provision allowing recovery of reasonable attorneys'

fees, the "guiding light" is "the lodestar method[, which] produces an award that *roughly*

approximates the fee that the prevailing attorney would have received if he or she had been

representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny*

*A. ex rel. Winn*, 559 U.S. 542, 550–51 (2010) (emphasis in original).  This estimation is carried

out in three steps, where the Court will "(1) determine the number of hours reasonably expended

in litigation; (2) set the reasonable hourly rate; and (3) use multipliers as warranted." *Salazar ex*

*rel. Salazar v. District of Columbia*, 809 F.3d 58, 61 (D.C. Cir. 2015) (citing *Eley v. District of*

*Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015)) (internal quotation marks omitted).

The determination of the reasonable hourly rate will involve consideration of "(1) 'the

attorneys' billing practices,' (2) 'the attorneys' skills, experience, and reputation' and (3) 'the

prevailing market rates in the relevant community.'" *Id.* at 62 (quoting *Covington v. District of*

*Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)).  The rates for claims under the DCMWRA and

DCWPCL are also codified by statute and must be based on "the matrix approved in *Salazar v.*

*District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000)." D.C. Code § 32-1308(b)(1).

Initially, the "fee applicant bears the burden of establishing entitlement to an award,

documenting the appropriate hours, and justifying the reasonableness of the rates." *Eley*, 793

F.3d 100 (quoting *Covington*, 57 F.3d at 1107).  Fee requests should be supported by

documentation updated contemporaneously as the attorneys conduct their work. *Heller v.*

*District of Columbia*, 832 F. Supp. 2d 32, 50 (D.D.C. 2011) (quoting *Concerned Veterans*, 675

F.2d at 1327 ("Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney."). Once an applicant meets this burden, a presumption applies that the product of the number of hours billed and the hourly rates, is "the reasonable fee." *Covington*, 57 F.3d at 1109 (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). At that point, the burden shifts to the opposing party to "provide specific contrary evidence tending to show that a lower rate would be appropriate," *id*. at 1110 (quoting *Concerned Veterans*, 675 F.2d at 1326), or that a multiplier should be applied.

Hours billed may be reduced accordingly if a plaintiff prevails on only one of a number of claims. *Mitchell Rubenstein Assocs.*, 735 F. App'x at 736 (citing *Williams v. First Gov't Mortg. & Inv'rs Corp.*, 225 F.3d 738, 746 (D.C. Cir. 2000) ("Under settled law, [a litigant] may recover fees only for work related to the claim on which he prevailed, and the fees awarded on that claim must be reasonable in relation to the success achieved.")). Additionally, "a court may punish an intolerably excessive fee request by denying any award at all," *Baylor v. Mitchell Rubenstein & Assocs., P.C.* ("*Baylor I*"), 857 F.3d 939, 957 (D.C. Cir. 2017) (Henderson, J., concurring), and may "impose a lesser sanction, such as awarding a fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from submitting an excessive request," *Environmental Defense Fund, Inc. v Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993). This is the case even when a statute provides for mandatory fee shifting. *Baylor I*, 857 F.3d at 958 (Henderson, J., concurring) (explaining that the "statutory text [of a mandatory fee-shifting statute] does not preclude a court from deciding—consistent with its inherent authority to protect the integrity of its proceedings—that a 'reasonable' fee in response to an exorbitant request is a nominal amount approaching zero." (internal citation omitted)). The determination

of what constitutes a reasonable fee award is within the "broad discretion" of the district court, and appellate courts "are ill-positioned to second guess the [district] court's [fee] determination." *Id.* (quoting *Morgan v. District of Columbia*, 824 F.2d 1049, 1066 (D.C. Cir. 1987)).

## III.   DISCUSSION

The parties do not dispute that plaintiff is a prevailing party entitled to attorneys' fees. *See* Defs.' Response at 1.  The parties' settlement agreement states that "[p]laintiff is a prevailing party and entitled to attorneys' fees pursuant to the FLSA, DCWPCL and the DCMWRA." Suvita Melehy Decl. ¶ 8.  Defendants dispute plaintiff's assertion that his requested fee is "reasonable," however, arguing that the fee is excessive in this case where defendants tried to settle the case as expeditiously as possible and plaintiff's recovery is less than one tenth of the requested fees.  *See* Defs.' Response at 15–16.  Defendants here are correct that the fee amount requested by plaintiff is extraordinary, if not outrageous, in the context of this case.  The following discussion sets out the arguments from both parties as to the hours billed and applicable rates, and then explains why a significant downward adjustment is necessary to set the appropriate fee award in this case.

### A.   Billing Rate

The parties agree that the DCMWRA and DCWPCL mandate that the LSI *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), rates apply to plaintiff's claims to the extent they were brought under those statutes.  Defs.' Response at 11; *see also Jackson v. Contemporary Family Servs.*, No. 18-cv-2349, 2019 U.S. Dist. LEXIS 188931, at *6 (D.D.C. 2019) ("With respect to the hourly rate, the DCWPCL mandates that the Court apply the Legal Services Index Matrix."); *Stephens v. Farmers Restaurant Group*, No. 17-cv-1087, 2019 WL 2550674, at *9 (D.D.C. June 20, 2019) ("Indeed, the DCMWA specifically mandates that an award of attorney's fees under that statute be based on the lodestar matrix for attorney fee rates

approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000).”); *Herrera v. Mitch O’Hara LLC*, 257 F. Supp. 3d 37, 46 (D.D.C. 2017) (“Because the *Salazar* court utilized the attorneys’ fee matrix that has been updated to account for inflation using the Legal Services Index of the Bureau of Labor Statistics (the ‘LSI *Laffey* matrix’), the statute’s plain language requires use of the LSI Laffey matrix to determine the applicable rate.”); *Serrano v. Chicken-Out, Inc.*, 209 F. Supp. 3d 179, 197 (D.D.C. 2016) (“Yet here the undersigned need not face the difficult question of the quantum and quality of evidence needed to justify LSI *Laffey* rates post-*Salazar* . . . because D.C. law itself mandates the Court use LSI *Laffey* rates.”).  Plaintiff presents several reasons why the LSI *Laffey* rates should also apply to plaintiff’s claims under the FLSA.

Defendants, by contrast, argue that because some of plaintiff’s work was conducted in Maryland, and therefore part of his claim is operable only under the FLSA and Maryland state law, the LSI *Laffey* rates should not be applied to the entirety of the work performed.  Defs.’ Response at 11.  They urge that a lower rate should be adopted in line with the market rates in Maryland, where plaintiff’s counsel’s practice is located, as opposed to the rates in D.C., where this claim was brought.  *Id.* at 11–13.

Defendants’ argument that the statutory mandate in the DCMWRA and DCWPCL should not apply is without merit.  As both parties have recognized throughout this litigation, the majority of plaintiff’s uncompensated work was performed in the District of Columbia, with 83% of the damages in the settlement attributed to claims brought under D.C. statutes that mandate application of the LSI *Laffey* rates.  *See* Settlement Demand Letter at 2.  As plaintiff points out, segregating counsel’s time between that spent pursuing claims based on D.C. law and that spent on claims under the FLSA and Maryland law would be a time-consuming but fruitless effort.  This is especially true in this case, where the only work plaintiff’s counsel conducted in

pursuit of plaintiff's claim was writing and filing a complaint, in D.C., calculating unpaid wages, and communicating with defendants' counsel about settlement. This work was all conducted in joint pursuit of both the D.C. and Maryland unpaid wages.

Plaintiff analogizes his circumstances to those in *Serrano v. Chicken-Out Inc.*, where then-Judge Ketanji Brown Jackson did not segregate the total hours spent on the case into time spent on D.C. and Maryland claims, but instead adopted the LSI *Laffey* rates for all of counsel's time spent jointly pursuing claims under the FLSA and D.C. and Maryland law. 209 F. Supp. 3d at 197–98. Application of the LSI *Laffey* rates is also appropriate here. Due to the nature of the settlement, the full amount of time spent by plaintiff's counsel on this case may be reasonably attributed to the claims under D.C. law, which require the use of the LSI *Laffey* rates.

**B.    Hours Billed**

Defendants argue that the hours billed by plaintiff are unreasonable and not a fair representation of the time spent by plaintiff's counsel on this case. Defs.' Response at 7–10. Plaintiff counters by pointing to the fee statement attached to his motion for attorneys' fees and arguing that defendants have not met their burden to overcome the presumption that the hours reported by plaintiff are reasonable. Pl.'s Reply at 8–12.

"Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Concerned Veterans*, 675 F.2d at 1327. Plaintiff's counsel here claims that all timekeepers kept contemporaneous records of their work on this case. Suvita Melehy Decl. ¶ 11. They also claim that they "no-charged" $4,577.40 worth of time spent on this case. *Id.*

In formulating a fee request under a fee shifting statute, attorneys are also obligated to reduce fees for work that is duplicative or unproductive. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are

11

not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis in original)).  Defendants identify several entries that they claim are duplicative, where multiple timekeepers charged for discussing the same work.  Defs.' Response at 9.  Defendants also argue that it was improper for plaintiff's counsel to have partners bill time for work that paralegals could have done, and to bill for "clerical" tasks.  *Id.* at 9–10.  As noted by the defendants, plaintiff's counsel was previously admonished for billing for such tasks.  *See Molina v. KP Stoneymill Inc.*, No. GLS-19-3123, 2021 WL 2805838 (D. Md. July 6, 2021).  Defendants insist that plaintiff's fees should be decreased for each of these reasons.

Plaintiff concedes that some time entries initially included in his request are indeed not compensable, but otherwise insists that this Court owes deference to plaintiff's counsel on the subjective determination that each of the hours billed was necessary to conduct the work on behalf of plaintiff.  *See* Pl.'s Reply at 8–12; Pl.'s Mot. at 11–12 (citing *Concerned Veterans*, 675 F.2d at 1338 (Tamm, J., concurring)).  Plaintiff also interprets the DCMWRA to prohibit a court from reducing the hours compensated in a fee award to less than the hours actually expended, "except upon clear and convincing evidence that the reduction will serve the remedial purposes of this law."  Pl.'s Mot. at 12 (citing D.C. Code § 32-1308(b)(2)).

If a plaintiff requesting attorneys' fees makes a reasonable showing of the hours expended in litigation, it is defendants' obligation to identify specific time entries that should not be compensated.  *Concerned Veterans*, 675 F.2d at 1337–38 (Tamm, J., concurring); *Bode & Grenier, L.L.P. v. Knight*, 31 F. Supp. 3d 111, 122 (D.D.C. 2014); *Citizens for Responsibility & Ethics in Wash. v. FEC*, No. 11-cv-95, 2014 U.S. Dist. LEXIS 124091, at *42–43 (D.D.C. 2014).

Here, defendants have described in detail why the overall request for attorneys' fees is excessive, but have not challenged each individual entry to prove precisely which hours should and should not be compensated.  Defendants point to some entries as duplicative as non-compensable "clerical" work, but seem to use each of these entries illustratively, stating that the improper entries "include, but may not be limited to" those identified and that the entries identified reflect only "several instances" of error.  Defs.' Response at 9.

A determination that an individual time entry is "not reasonably necessary" to the litigation "turns on so many subjective factors that it seldom should be the basis for reduction of an attorney fee." *Jacquette v. Black Hawk Cnty.*, 710 F.2d 455, 460 (8th Cir. 1983).  Courts should not endeavor to nit-pick times entries of a party petitioning for fees.  *Concerned Veterans*, 675 F.2d at 1338 (Tamm, J., concurring).  Rather than evaluating each time entry in plaintiff's fee statement at this stage for whether it should be compensated, defendants' objections to the time spent by plaintiff's counsel on this case will instead be taken into account in the determination of whether an adjustment should be applied to the fees as calculated.

### C.    Application of Multipliers or Adjustments

In the third step of determining reasonable fees under a fee-shifting statute, the court must "use multipliers as 'warranted.'"  *Salazar*, 809 F.3d at 61 (D.C. Cir. 2015).  These multipliers are used to ensure the reasonableness of a fee award, after the lodestar approach has been applied.  *Martini v. Fed. Nat'l Mortgage Assoc.*, 977 F. Supp. 482, 484–85 (D.D.C. 1997).  The parties hotly contest whether adjustments are warranted here, but the defendants are correct that a significant adjustment is necessary to reach a reasonable fee award in this case.

Plaintiff's request for attorneys' fees includes $23,781.20 claimed solely for the preparation of the fee petition and fees accrued in litigating the fee award.  *See* Pl.'s Second Supp. at 5; Pl.'s Mot., Ex. A, Summary of Attorneys' Fees at 1, ECF No. 10-2.  "'[F]ees on fees

must be reasonable," and courts "have an 'obligation to scrutinize the hours spent preparing the fee petitions to insure [sic] that the total is reasonable and that it does not represent a windfall for the attorneys.'" *Boehner v. McDermott*, 541 F. Supp. 2d 310, 325 (D.D.C. 2008) (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985)).

Here, plaintiff's counsel has turned a simple, straightforward unpaid wages claim that was resolved in weeks into a major fee generator, with the amount requested just for fees-on-fees equal to almost twenty times that of the wages initially in dispute. Indeed, absent plaintiff's counsel's excessive requests for attorneys' fees in this otherwise simple case, with a completely uncontested underlying claim, this suit would have been settled in December 2021, nearly two years ago. Plaintiff's counsel insists that defendants are to blame for this delay, due to their purported unwillingness to negotiate fees, but this placement of blame is wholly unwarranted when plaintiff's counsel's own unreasonable opening demand for attorneys' fees is the obstacle that necessitated litigation of this issue. Plaintiff's counsel first demanded $25,000 in fees, at a point when the only meaningful work they had completed to advance their client's interests was filing the complaint, calculating plaintiff's unpaid wages, and communicating the settlement demand with defense counsel, who had already made clear that defendants planned to settle plaintiff's claim as quickly as possible by paying the full amount to which plaintiff claimed entitlement. Defs.' Response at 4–5.

Awarding fees to plaintiff's counsel anywhere close to their demand would put this Court in the position of approving their conduct in drawing this litigation out more than an additional year in pursuit of only their own pecuniary gain. Indeed, Judge Henderson on the D.C. Circuit has noted that she would impose sanctions on counsel who request excessive fees, particularly when counsel "spent more time working on fee matters than on tasks essential to [the client's]

claim." *Baylor I*, 857 F.3d at 959 (Henderson, J., concurring).  In that case, the "district  court said of the fee request that 'the tail [is] wagging the dog," and counsel had "lost sight of the real party in interest." *Id.* at 959–60 (alteration in original).  Plaintiff's counsel in this case has certainly lost sight of the real party in interest, namely, plaintiff.  The parties agreed in December 2021 that defendants would pay plaintiff $4,379, and yet he has waited two years since then for resolution of this case, due in large part to the demands of his own counsel.  Indeed, plaintiff's counsel rejected defendants' second settlement offer—offering plaintiff the full amount of overtime wages and liquidated damages he claimed—before even communicating that offer to their client, solely because they were dissatisfied with defendants' offer on fees.  *See* Burton Aff. ¶¶ 4–5.  The $23,781.20 in fees and $124.17 in costs accumulated solely in the pursuit of advancing what was already an unreasonable request for attorneys' fees will thus not be included in the fee award, under this Court's broad discretion.

Once the attorneys' fees claimed for work on the instant fee motion are subtracted from plaintiff's fee request, $26,352.30 in requested fees remain.  This amount is also unreasonable to award for several reasons, described below, so a multiplier should apply.  For the following reasons, plaintiff will be awarded $9,000 in attorneys' fees, corresponding to approximately one third of the fees requested in this case, and $500 in costs.

First, as described in the declarations submitted with defendants' Response in Opposition to plaintiff's motion and confirmed by plaintiff's own summary of attorneys' fees, this case was essentially over as soon as it started, at least as to the underlying claim.  Defendants' counsel reached out to plaintiff's counsel only sixteen days after the complaint was filed, "to indicate a willingness to resolve the matter[,] . . . waive service of process and further indicate[] that Telligent was willing to provide whatever informal discovery was necessary in order to reach

resolution and limit any applicable attorneys' fees." Mourges Aff. ¶ 5. Six days later, on November 11, 2021, defense counsel tendered 53 pages of payroll records requested by plaintiff, along with a settlement offer based on Telligent's calculation of plaintiff's unpaid overtime wages. *Id.* at ¶ 8.

Defense counsel took mere days to calculate the unpaid wages owed to plaintiff and formulate a settlement offer. Yet, once armed with the same payroll data, provided by defendants through informal discovery, plaintiff's counsel took weeks to continue investigating plaintiff's claim—in addition to whatever investigation they purportedly conducted before the filing of the complaint, for which they are claiming $5,668.30 in fees—and recalculate the unpaid wages on their own. *See id.* at ¶ 13. Defendants also argue that plaintiff's counsel did not quickly communicate the settlement offer "to Mr. Munoz as all attorneys are ethically obligated to do." Defs' Response at 3; *see also id.* at 14 ("noticeably absent from [counsel's] time entries is any communication whatsoever between Mr. Munoz and Ms. Aguilar conveying that offer"). Plaintiff's counsel vehemently denies this allegation, stating that it is "patently false with a capital 'P'," but plaintiff's counsel's own timesheet records indicate that they did not communicate the offer to plaintiff for at least seven days after it was made (because plaintiff's counsel did not communicate with plaintiff *at all* for seven days after the settlement offer was received). *See* Pl.'s Reply at 6. This series of events supports defendants' claim that they "sought to avoid the unnecessary accumulation of exorbitant attorneys' fees by seeking a quick and quite favorable resolution for Plaintiff, but [were] delayed at every turn by [p]laintiff's counsel." Defs.' Response at 1. These apparent delay tactics from plaintiff's counsel are one reason why a downward adjustment would be appropriate in fashioning plaintiff's fee award.

Plaintiff's counsel delay and lack of transparency in providing detail about their time entries also contribute to the need for a downward adjustment here. When plaintiff's counsel first requested $25,000, plus future attorneys' fees, along with their original settlement demand, they provided no records supporting that figure to explain how such a significant amount of fees could have accrued in only the first few weeks of the case. *See* Settlement Demand Letter at 2. The next day, defendants' counsel reasonably requested a breakdown of the hours spent. Mourges Aff. ¶ 14. Six days later, plaintiff's counsel responded to say that they could not provide a breakdown of the time worked and that "this would take considerable time." Mourges Aff. ¶ 18. After another round of settlement offers, plaintiff's counsel again indicated "that it would be difficult to provide a more detailed breakdown of time billed, and that if required to provide those documents, it would increase the settlement demand." Defs.' Response at 6. These statement to defendants during settlement negotiations conflict with plaintiff's counsel's assurance to this Court that "[a]ll timekeepers keep track of time with time and billing software . . . contemporaneously with the expenditure of time in accordance with the Firm's policies." Suvita Melehy Decl. ¶ 11. Plaintiff's counsel's inability to produce timekeeping records efficiently casts doubt on whether contemporaneous time records were actually kept in this case.

A fee statement was not provided to defendants until January 28, 2022, almost two months after this statement was first requested, Burton Aff. ¶¶ 12–13, although plaintiff's counsel's time entries indicate that this information was first downloaded much earlier, on December 17, 2021, Summary of Attorneys' Fees at 5 (showing a time entry dated December 17, 2021, when Suvita Melehy "Download[ed] information regarding time entries made by time keeper as requested by Defendants for their consideration in effort to settle the case."). Whether the delay in providing information on counsel's time entries was due to the lack of available data

from contemporaneous entries or from purposeful delay to increase the fee demand, it again contributes to the need for a downward adjustment to arrive at a reasonable fee award here.

As defendants point out, plaintiff's fee request claims compensation for time spent on non-compensable "clerical" tasks, such as adding deadlines to their calendar and backing up their client's phone data for potential discovery purposes.  Defs.' Response at 9–10; *see also Two Men & A Truck/Int'l, Inc. v. A. Mover, Inc.*, 128 F. Supp. 3d 919, 929–30 (E.D. Va. 2015) (finding that clerical tasks include "collating and filing documents with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings and preparing sets of orders, document organization, creating notebooks or files and updating attorneys' calendars, assembling binders, emailing documents or logistical telephone calls with the clerk's office") (citations omitted).  This behavior is especially probative of the need for a downward adjustment in this case because counsel is a "repeat offender."  *Baylor I*, 857 F.3d at 955 (Henderson, J., concurring).  Plaintiff's counsel has been personally admonished for claiming time for such work in prior cases.  *Molina v. KO Stoneymill, Inc.*, No. GLS-19-3123, 2021 WL 2805838, at *6 (D. Md. July 6, 2021) (holding that plaintiff's counsel's time entries "'preparing the complaint package,' and 'calendaring deadlines,' and 'preparing documents for mediation' . . . are non-compensable forms of clerical work that have been stricken.").  Plaintiff's counsel's inclusion of non-compensable clerical time entries in their fee request further confirms a need for a downward adjustment of the fee award in this case, especially because plaintiff's counsel has been notified of the improper nature of these requests in previous cases.

Lastly, a comparison between the damages awarded to the plaintiff in the settlement agreement and the attorneys' fees requested by counsel supports the application of a modifier or adjustment here.  While a fee award should not be reduced solely because the fee total exceeds

18

the amount of damages awarded, courts often consider the magnitude of a fee award in comparison to the damages won in an underlying claim.  *See Williams*, 225 F.3d at 746 ("Under settled law, [a litigant] may recover fees only for work related to the claim on which he prevailed, and the fees awarded on that claim must be reasonable in relation to the success achieved."); *Eley v. Stadium Group, LLC*, 236 F. Supp. 3d 59, 65 (D.D.C. 2017) (noting that "the proposed fee award represents approximately 37% of the total recovery" and finding the proposed fees reasonable); *Sarceno v. Choi*, 78 F. Supp. 3d 446, 449–52 (D.D.C. 2015) (approving a settlement where the agree upon attorneys' fee award was less than fifty percent of the total settlement amount, but only thirty-six percent of the attorneys' fees actually incurred by the plaintiffs).  Here, if plaintiff's counsel were to be awarded the full amount of attorneys' fees requested, the fee award itself would comprise of more than 92% of the total recovery.  As the defendants have argued, the "overall facts and circumstances simply do not support a fee award of that magnitude in this case."  Defs.' Response at 15.  Awarding 92% of the total recovery in this case to plaintiff's counsel would be patently unreasonable, when the same counsel has drawn out this litigation for almost two additional years, to the potential detriment of their own client.

In *Environmental Defense Fund, Inc. v. Reilly,* the D.C. Circuit awarded plaintiff's attorneys approximately one third of the fees petitioned for, after denying all fees for "intolerably excessive time entries" and making further downward adjustments.  1 F.3d at 1255.  An award here of $9,000 in attorneys' fees—constituting approximately one third of the fees requested for time spent litigating the underlying claim—would be similarly reasonable in this case.

There is also doubt as to whether each of plaintiff's claimed costs was submitted in good faith and should be compensated.  For example, plaintiff's counsel requests $10 in payment for "face masks for in office meetings."  Pl.'s Mot., Ex. G, Record of Expenses at 1, ECF No. 10-8.

Seeking reimbursement from defendants for an item that is part of plaintiff's counsel's personal attire and office safety protocol is simply unacceptable.  To ensure a reasonable award as to the costs in this case and "discourage [plaintiff's counsel] from submitting an excessive request," *Reilly*, 1 F.3d at 1258, again in the future, the costs requested will be adjusted downwards to $500, from the amount of $635.44 requested in the plaintiff's initial fee petition in this case. Record of Expenses at 1.

## IV.   CONCLUSION

For the above reasons, plaintiff's motion for attorneys' fees is granted in part, and defendants must remit to plaintiff $9,500 to cover his attorneys' fees and costs.  This sum constitutes the reasonable fee accrued in pursuit of plaintiff's claims under the DCWPCA, DCMWRA, and FLSA, after consideration of the exhibits and declarations submitted by both parties, the damages agreed upon as to the underlying claims, the procedural history of this dispute, and the conduct of both plaintiff's and defendants' counsel in negotiating this fee award.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  October 2, 2023

_____
**BERYL A. HOWELL**
United States District Judge

20